

United States Courts
Southern District of Texas
FILED

DEC 20 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONDA L. CORMIER | : | CIVIL ACTION NO.: |
| | : | |
| VERSUS | : | JUDGE: |
| | : | |
| ROBERT WILKIE, SECRETARY | : | MAGISTRATE JUDGE: |
| OF VETERANS AFFAIRS | : | JURY DEMAND |

### PLAINTIFF'S FIRST COMPLAINT

COMES NOW, Plaintiff RONDA L. CORMIER ("Plaintiff"), filing this Plaintiff's First Complaint, complaining of Defendant ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS ("Defendant") and in support thereof respectfully shows this Court as follows:

### JURISDICTION AND VENUE

1.     Plaintiff invokes the jurisdiction of this Court pursuant to the Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. sections 2000e *et seq.* (Title VII) and Section 501 of the Rehabilitation Act of 1973. (Rehab Act) This action arises under laws of the United States regulating commerce and providing for the protection of Civil Rights.

2.     The unlawful employment practices alleged in this complaint were committed in the Southern District of Texas. Plaintiff is employed in the Southern District of Texas. Venue is proper pursuant to 28 U.S.C. section 1391(b)(2).

### PARTIES

3.     Plaintiff, RONDA L. CORMIER, is a citizen of the United States of America and a resident of Texas.

4.     Plaintiff avers on information belief that Defendant, ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS, is an active United States governmental agency and may be sued in this court under Title VII and the Rehabilitation Act.

5.      The Defendant is an "employer" within the meaning of section 701(b) of Title VII and the Rehab Act in that it engages in an industry affecting commerce and has employed the requisite number of employees for the requisite duration under Title VII and the Rehab Act.

## ADMINISTRATIVE PROCEDURES

6.      Plaintiff contacted the Office of Resolution Management on July 14, 2016. Her formal complaint was filed on August 11, 2016.

7.      Plaintiff timely filed an Appeal of the Final Agency Decision issued on October 30, 2017.

8.      Plaintiff received a "Notice of Right to File a Civil Action" on or about September 24, 2019, entitling her to commence this action within 90 days of her receipt of that notice. Further, this Plaintiff has filed within 90 days of the receipt of that notice. A copy of that notice is attached hereto as Exhibit One.

9.      Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action. All administrative remedies have been exhausted. There are no other laws prohibiting the unlawful employment practices alleged in this complaint under which Plaintiff is obligated to make a complaint or charge.

## STATEMENT OF FACTS

10.      Defendant is an employer within the meaning of Title VII and the Rehab Act in that it employs the requisite number of employees under Title VII and the Rehab Act during all times relevant to this complaint. Plaintiff is an African-American, female and a qualified individual with a disability and is employed by the Defendant. Plaintiff's race and gender has been the same throughout the time that the actions complained in this complaint occurred.

11.     Plaintiff began working for the Defendant on or about October 4, 2004. Plaintiff is currently employed as the EEO Manager, GS-12, Step 10. Previously, and during the entire time that the allegations in this complaint occurred, Plaintiff was a staff/general attorney, GS-14, Step 7.

12.     On or about October 1, 2015, the Office of General Counsel (OGC) underwent a reorganization and JEFFREY REEDER (S1), Deputy Chief Counsel became Plaintiff's first-line supervisor.  Mr. Reeder is a Caucasian male with no disability or known prior EEO activity.

13.     JEFFERY STACEY (S2), Chief Counsel, became her second-line supervisor. Mr. Stacey is a Caucasian male with no known disability or prior EEO activity.

14.     Prior to the reorganization, Plaintiff's first-line supervisor was KEVIN CURTIS, Assistant Regional Counsel. Mr. Curtis is a Caucasian male with no known disability or prior EEO activity.

15.     Plaintiff's second-line supervisor was ANDRE' BOUDREAUX, Regional Counsel. Ms. Boudreaux is a Caucasian female with no disability or prior EEO activity.

16.     At the time of the reorganization, Plaintiff had been in this department for at least 11 years, without any conduct, performance or attendance issues.

17.     On September 24, 2013, Plaintiff requested a reasonable accommodation. At the time of her request she was under the care of her physician, Dr. Margaret Basu. Dr. Basu gave Plaintiff a diagnosis of Generalized Anxiety Disorder, Chronic Pain Syndrome, Depressive Disorder and Post Traumatic Stress Disorder.

18.     As a result of this diagnosis, Plaintiff was restricted from working for a period of 6 weeks with the option to extend it to 12 weeks if her physician deemed it necessary.

19.     Plaintiff remained off work from September 2013 until March 2014.

20.     Upon her return to work on March 1, 2014, Plaintiff returned to work with the following physician's restrictions:

a)      Full-time telework;

b)      A restricted caseload;

c)      A caseload that restricted her cases to the Houston metropolitan area;

d)      Restricting her duties in the Region 14 Attorney of the Week Rotation; and

e)      Restricting her involvement in training of facilities, interns, paralegals and law students.

21.     At the time of the Plaintiff's original reasonable accommodation request, in March 2014, Ms. Boudreaux was her second-line supervisor.

22.     Ms. Boudreaux responded, in writing, to the Plaintiff's reasonable accommodation request. In her documented response she allowed her to serve in a full-time telework capacity and restricted her involvement in training of facilities, interns, paralegals and law students.

23.     On VA Form 0857, Ms. Boudreaux explained that she could not limit the number of cases Plaintiff was assigned because this would interfere with the essential functions of her position. Ms. Boudreaux specifically explained her reasons for not restricting the number of cases; however, her decision remained silent regarding geographical and "Attorney of the Week" restrictions.

24.     Beginning in March 2014, Ms. Boudreaux, despite what was documented in the Plaintiff's VA Form 0857 response, granted the following reasonable accommodation:

a)      Full-time telework;

b)      A restricted caseload;

c)      A caseload that restricted her cases to the Houston metropolitan area;

d)      Restricting her duties in the Region 14 Attorney of the Week Rotation; and

e)      Restricting her involvement in training of facilities, interns, paralegals and law
students.

25.     This reasonable accommodation remained in place from March 2014, until October
2015.

26.     More specifically, Plaintiff was allowed to telework full-time from her home; she
was precluded from participating in "Attorney of the Week" assignments; her caseload was
reduced to 20 or fewer cases; her caseload was restricted to the Houston, VA, and she was not
required to train or mentor incoming attorneys, paralegals, interns or facilities.

27.     At the time of the reorganization, Plaintiff had been on a reasonable
accommodation for 19 months without any conduct, performance or attendance issues.

28.     In September 2015, prior to the reorganization, Plaintiff sent S1 an email
materializing her reasonable accommodation and requesting a meeting to discuss its parameters.
Plaintiff received no response to her email request.

29.     Upon reorganization, in October 2015, in violation of her reasonable
accommodation, Mr. Reeder began assigning Plaintiff a heavier caseload—her cases increased
from fewer than 20 to over 30; placing her on the calendar to serve as "Attorney of the Week"
twice per month; and assigning her cases outside of the Houston area. S2 also assigned Plaintiff to
provide training to the Houston VA.

30.     In October 2015, during Plaintiff's reasonable accommodation period, she was
assigned the complex case of CD.

31.     On October 8, 2015, S1 approached Plaintiff and informed her that he had received
a complaint from the Associate Director, James Hedge (Caucasian male with no disability, or
known prior EEO activity) of the Veterans Benefits Administration (VBA), regarding her work.

32.     Specifically, JENNIFER STEWART, Labor Relations Specialist, (Caucasian, female, no prior EEO activity, no disability) reported to Plaintiff's colleague Thomas Herpin (Caucasian, male, no disability, or prior EEO activity) that she anticipated Plaintiff would miss an evidentiary deadline in the CD case.

33.     As a result, Mr. Herpin contacted Mr. Hedge who contacted S1 and requested Plaintiff be reassigned from the CD case.

34.     S1 contacted the Plaintiff and told her the client no longer had confidence in her abilities. Upon hearing what transpired, Plaintiff also requested the case be reassigned. Plaintiff believed that her representation was a conflict of interest; also, based on the client's repeated request to have her removed, Plaintiff feared her work would be sabotaged. Therefore, she requested that the CD case be assigned to another staff attorney. At the time there were three other labor attorneys available to take on the matter.

35.     Despite Plaintiff's and the client's numerous requests to reassign her, S1 refused to reassign the case of CD. Instead, S1 stated to the Plaintiff, "I'm not reassigning the case. You need to prove your competence to the client."

36.     In November 2015, Plaintiff submitted a request for settlement authority on the CD matter. On November 27, 2015, S1 accused Plaintiff of failing to submit the seventeen-page request for settlement authority, which she had previously submitted on November 18th and 25th, 2016.

37.     On November 30, 2015, S1 issued Complainant a written counseling regarding the CD matter.

38.     On November 30, 2015, in an email, S1 told Plaintiff, "If you do not like the way I'm supervising you, take it to the EEO, OSC, or OIG if you want."

6

39.     Subsequently, S2 allowed S1 to attend and monitor the hearing regarding the CD case. This was the first-time in the Plaintiff's 13-year tenure, when a supervisor accompanied her to a hearing. Despite S1's presence at the hearing, Plaintiff went on to litigate the CD matter, on behalf of the Agency, wherein she received a favorable decision with a finding of no discrimination.

40.     Prior to the CD hearing, on January 6, 2016, Plaintiff provided management officials with a subsequent request from her physician reiterating her previous restrictions.

41.     Management, in accordance with VA Handbook 5975.1 Appendix C, must have the entire reasonable accommodation process completed within 30 days of inception. It was not until June 2, 2016, almost six months later, that management responded to Plaintiff's supplemental physician's restrictions.

42.     On February 17, 2016, in violation of her physician's restrictions and her reasonable accommodation, S1 assigned Plaintiff the case of VT located in San Antonio, Texas. Plaintiff accepted the assignment.

43.     On February 22, 2016, in violation of her physician's restrictions and her reasonable accommodation, S1 assigned Plaintiff a case in Lincoln, Nebraska.

44.     On April 6, 2016, in violation of her physician's restrictions and her reasonable accommodation, S1 began assigning Plaintiff more and more cases outside the Houston, Texas area.

45.     On April 19, 2016, in violation of her physician's restrictions and her reasonable accommodation, Plaintiff's second level supervisor, S2, assigned her to provide Whistleblower Protection Act training at the Houston VA Medical Center.

7

46.     On June 1, 2016, S2 required Plaintiff to sign a pre-filled VA Form 0857 request for reasonable accommodation.

47.     On June 2, 2016, S2 denied Complainant reasonable accommodation request.

48.     On June 23, 2016, S1 threatened to cancel Plaintiff's previously approved annual leave for July 1-12, 2016.

49.     On July 14, 2016, S1 rated Plaintiff less than fully satisfactory on her mid-year performance appraisal and placed her on a performance improvement plan (PIP).

50.     On July 14, 2016, S1 ordered Plaintiff to enter her time in GC Laws (the billing system) every day or by the end of each week. During Plaintiff's tenure, there was no policy, practice or requirement to enter time within a specified timeframe.

51.     On July 14, 2016, S1 ordered Plaintiff to take time management and other trainings in the VA Talent Management System. During Plaintiff's tenure, no other attorneys were required to take training in addition to the annual training requirements.

52.     On July 14, 2016, S1 ordered Plaintiff to open newly assigned cases by the end of her tour of duty each day. During Plaintiff's tenure, there was no practice, policy or requirement that mandated attorneys to open newly assigned cases by the end of their tour of duty.

53.     Beginning on July 19, 2016, and every Tuesday following, S1 required Plaintiff to attend a weekly PIP meeting. Unfortunately, however—and without regard for the Plaintiff's schedule—at the time of the meeting, S1 would send Plaintiff an email re-scheduling the meeting.

54.     In July 2016, Plaintiff complained to S2 that she believed S1 was subjecting her to a hostile work environment based on her race and disability and violating her physician's restrictions as well as her reasonable accommodation. Plaintiff requested that S1 be removed as her first-line supervisor. From July 19 through August 31, 2016, S2 refused to remove S1 as

Plaintiff's supervisor or do anything to curtail S1's harassment toward the Plaintiff. S2 failed to investigate or conduct management inquiry regarding her claims of harassment.

55.     In July 2016, Plaintiff requested that her representative be allowed to attend PIP meetings. From July 19 through August 31, 2016, S1 prohibited Plaintiff from inviting her representative to attend PIP meetings.

56.     In an email correspondence dated July 20, 2016, Plaintiff requested S2 to resend the PIP. S2 refused to resend the PIP.

57.     Plaintiff submitted a request for settlement authority in the VT case. After reviewing the request, S1 issued Plaintiff a written counseling and ordered her to make track changes to a request for settlement authority. S1 ordered Plaintiff to make track changes to the same document more than five times.

58.     While awaiting approval of settlement authority from S1, Plaintiff secured settlement authority from the Director of the South Texas Veterans Health Care System in San Antonio, Texas on the VT case.

59.     In accordance with office policy, on July 25, 2016, Plaintiff briefed S1 on the VT case and relayed to him the Director's willingness to settle the matter. S1 refused to authorize Plaintiff's settlement authority and directed her not to settle the matter. S1 then commenced to speak with the Director of the facility and discourage him from settling the case. This gravely undermined the Plaintiff's credibility with the client.

60.     On July 26, 2016 and in August 2016, S1, in violation of any and all attorney-client privileges, continuously badgered Plaintiff and demanded she answer his inquiries regarding the counsel and information she was receiving from her attorney.

61.     Despite previous request to have her counsel present for the PIP meetings, on August 1, 2016, S1 ordered Plaintiff to participate in a PIP meeting and discuss of her cases without the presence of counsel.

62.     Also, on August 1, 2016, S1, in violation Plaintiff's physician's restrictions and her reasonable accommodation, assigned Plaintiff the PW case originating in Dallas, Texas, along with two other cases in Houston.

63.     On August 2, 2016, S1, in violation Plaintiff's physician's restrictions and her reasonable accommodation, assigned Plaintiff the GH case originating in Austin, Texas, along with one other case in Houston.

64.     As a part of the PIP process, S1 took notes and disseminated them to the Plaintiff. On August 2, 2016, S1 ordered Plaintiff to make track changes to his PIP notes by the close of her tour of duty.

65.     During meetings with Plaintiff, S1 would tell her how to litigate her cases and ordered her to do specified duties. When entering billable hours into the GCLAWS data bank, Plaintiff, in order to document her work, would copy and paste S1's orders into the system. On August 9, 2016, S1 ordered Plaintiff to not copy and paste email messages, as it related to the cases, between them in GCLaws.

65.     On August 9, 2016, S1 ordered Plaintiff to make track changes to his PIP notes by August 19, 2016.

66.     On August 9, 2016, S1 ordered Plaintiff to respond to his written counseling by August 19, 2016. Agency policy or practice provides the option to respond to a written counseling, but it is not mandatory.

67.     On August 9, 2016, Plaintiff's laptop began to malfunction. The matter concerned a resolution that had to be repaired utilizing remote access. Despite Plaintiff's attempts to convey to S1 that the matter had to be tested remotely, S1, in violation of her physician's restrictions and her reasonable accommodation of full-time telework, ordered Plaintiff to report to the office to do her work.

68.     On August 25, 2016, S1 and S2 contacted Plaintiff's attorney, via telephone, and accused Plaintiff of failing to record her time in GCLaws; and complained that Plaintiff was difficult to manage.

69.     In this same conversation and to the Plaintiff, management officials accused Plaintiff of causing harm and detriment to her cases.

70.     On August 30, 2016, S1, in violation Plaintiff's physician's restrictions and her reasonable accommodation and increased her caseload to 35 cases.

71.     On August 31, 2016, S1 violated Plaintiff's physician's restrictions and her reasonable accommodation, assigned Plaintiff a case in Sheridan, Wyoming.

72.     As a result of S1 and S2's violation of Plaintiff's physician's restrictions and her reasonable accommodation, on September 15, 2016, Plaintiff was forced to go on extended medical leave under 29 CFR Part 825.109 of the Family Medical Leave Act (FMLA).

73.     On September 16, 2016, Plaintiff requested extended medical leave through FMLA, to be placed in the Voluntary Leave Program and advanced annual leave. Prior to Plaintiff's departure, on or about, September 15, 2016, Plaintiff uploaded and accounted for her time in the GCLaws data bank. At the time she accounted for and documented her day for 9.0 hours of time served. Despite the Plaintiff's accounting for her time and updating all her cases in GCLaws and in a memorandum to S1—while on extended medical leave, in violation of FMLA,

on September 21 and 26, 2016—contacted the Plaintiff at her home to question her about her whereabouts on September 15, 2016 during 3.75 of her tour of duty. Again, even though, Plaintiff accounted for her time, S1 accused Plaintiff of being absent during her tour and inquired as to what type of leave she wanted to take for the 3.75 hours.

74.     In September 2016, in accordance with policy, VA Handbook 5011, Part III, Appendix B, Plaintiff presented management with a request for advance sick leave and to be placed in the Voluntary Leave Program (VLP). Completed requests in memorandum form should be forwarded to the Human Resources Management Officer. Applicants must be notified within 10 workdays of their eligibility to participate in the program as a leave recipient. From September 17, 2016 through October 20, 2016, S1 failed to respond to Plaintiff's requests.

75.     In accordance with OPM regulations and VA Handbook 5011/16 Part III, Chapter 3, Section 10 (a)(1), a request to be placed on leave without pay (LWOP) must be initiated by the employee. Without Plaintiff's request, on October 21, 2016, S1 placed Plaintiff on LWOP.

76.     During the interim of these events, on more than one occasion, Plaintiff requested to be reassigned to another position. On November 5 and 10, 2016, Plaintiff's requests for reassignment were denied.

77.     During the interim of these events, Plaintiff learned, from a colleague who donated her the leave, that she had been donated 20 hours of leave through the VLP. From December 16, 2016 through December 30, 2016, S1 placed Plaintiff on LWOP, even though Plaintiff had been donated 20 hours from the VLP.

78.     On December 30, 2016, S1 failed to generate an SF52 for Plaintiff's LWOP, causing her to infer her health benefits and enrollment were terminated.

79.     Despite Plaintiff's request to be placed in the VLP, in December 2016, S1 failed to notify Plaintiff that her name had been removed from the list of approved candidates for the VLP.

## INCORPORATION OF ALLEGATIONS

80.     All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## FIRST CLAIM FOR RELIEF

### Violation of Title VII-Race and Sex (Disparate Treatment)

81.     The effect of the Defendant's actions, as alleged above, denied Plaintiff equal employment opportunities and discriminated against her based on her race and/or sex in violation of Title VII. Plaintiff is a member of a protected class under Title VII as she is an African American female. Plaintiff was intentionally and disproportionately given verbal and written counseling's, given a less than fully satisfactory mid-year appraisal and placed on a PIP that negatively impacted her ability to be promoted and the harassment negatively affected her health.

82.     The effect of the Defendant's actions, as alleged above, denied Plaintiff equal employment opportunities and discriminated against her based on her race and sex. Based on her race and sex, African American female, Plaintiff was treated differently and less than favorably than similarly situated persons who were outside of her protected class when she was subjected to verbal and written counseling's, given a less than fully satisfactory on her mid-year performance appraisal and placed on a PIP. Based on her knowledge, information and belief, other employees of a different race and sex were not given verbal and written counseling's, a less than satisfactory mid-year appraisal and placed on a PIP.

83.     Plaintiff was treated differently and less favorably than similarly situated persons outside her protected class when she was ordered to document her billable hours into the GCLAWS

data bank by the end of her tour of duty or no later than the end of the week; to open her cases by the end of her tour of duty; serve as "Attorney of the Week" more than once per month; submit numerous drafts of request for settlement authority on her cases; after securing settlement authority on her cases, Plaintiff was undermined by her supervisor and ordered not to settle cases; assigned cases outside of Houston Metropolitan area; and take additional training in the VA Talent Management System.

84.     Plaintiff was treated differently and less favorably than similarly situated persons who were of a different race and sex by losing promotion opportunities.

85.     During Plaintiff's tenure, there were two similarly situated GS-14 attorneys under the supervision of Ms. Boudreaux and Mr. Curtis, and subsequently, Mr. Stacey and Mr. Reeder who also served as staff/general attorneys that were treated differently or more favorably than the Plaintiff. For instance, neither Sandra Cawley (Caucasian female with no disability or prior EEO activity ) nor Thomas Herpin  (Caucasian male with no disability or prior EEO activity) were required to: document their billable hours into the GCLAWS data bank by the end of their tour of duty or no later than the end of the week; to open their cases by the end of their tour of duty;  to serve as "Attorney of the Week" for more than a week per month; submit numerous drafts of request for settlement authority on their cases; after securing settlement authority, on their cases, were not undermined by their supervisor or ordered not to settle cases; or to take time management or other training other than their annual requirements in the VA Talent Management System.

86.     Thomas Herpin, an attorney several years the Plaintiff's junior, was promoted to Deputy Chief Counsel in 2018.

87.     As a result of the actions previously stated, Plaintiff suffered discrimination by S1, and then by S2, when he refused to curtail or prevent the discrimination of S1.

14

88.     Plaintiff has suffered financial injury as a result of the Defendant's treatment.

89.     Plaintiff has suffered irreparable injury from the Defendant's disproportionate and discriminatory application of policies and practices as stated in this complaint.

90.     As a result of Defendant's actions and omissions, Plaintiff has suffered emotional and mental anguish, aggravation of the same, and injury to her health.

91.     Defendant acted with intent, malice and reckless disregard, in violation of Plaintiff's civil rights, therefore entitling her to equitable relief and/or exemplary damages.

92.     Plaintiff is entitled to monetary damages for Defendant's violation of her rights as guaranteed by Title VII.

## SECOND CLAIM FOR RELIEF

### Violation of the Rehabilitation Act of 1973

93.     The effect of the Defendant's actions, as alleged above, denied Plaintiff equal employment opportunities and discriminated against her based on her disability and failed to adhere to her reasonable accommodation in violation of Section 501 of Rehabilitation Act of 1973. (Rehab Act) Plaintiff is a member of a protected class under the Rehab Act as she is a qualified individual with a disability.

94.     Since 1998, as a result of a major motor vehicle accident, Plaintiff has a documented record of Generalized Anxiety, Depression, Chronic Pain Syndrome, Temporal Mandibular Joint Syndrome, and Post Traumatic Stress Disorder.

95.     Under the Commission's regulations, a federal agency may not discriminate against a qualified individual based on disability and is required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability

unless the Agency can show that reasonable accommodation would cause an undue hardship. *See* 29 C.F.R. § 1630.2(0), (p).

96.     To establish that she was denied a reasonable accommodation, Plaintiff must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a "qualified" individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the Agency failed to provide her with a reasonable accommodation. See Enforcement Guidance on Reasonable Accommodation. An individual with a disability is "qualified" if he or she satisfies the requisite skill, experience, education, and other job-related requirements of the employment position that the individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. § 1630.2(m). "Essential functions" are the fundamental job duties of the employment position that the individual holds or desires. Id. § 1630.2(n).

97.     A request for a modification or change at work because of a medical condition is a request for reasonable accommodation. Enforcement Guidance on Reasonable Accommodation at Q. 1. After receiving a request for reasonable accommodation, an agency "must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. pt. 1614. app. §1630.9. Thus, "it may be necessary for the [agency] to initiate an informal, interactive process with the individual with a disability . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. §1630.2(0)(3); see also 29 C.F.R. pt. 1630 app § 1630.9; Enforcement Guidance on Reasonable Accommodation at Q. Reasonable accommodation includes such modifications or adjustments as job restructuring, the acquisition or modification of equipment or devices, and reassignment to a vacant position. 29 C.F.R. § 1630.2(o)(2)(ii)

16

98.     In 2013, through her physician, Plaintiff approached her, then supervisor, Regional Counsel Andre' Boudreaux with a request for reasonable accommodation. Specifically, Plaintiff requested full-time telework; a decrease in her caseload to 20 cases or fewer; to refrain from participating or being scheduled to serve as "Attorney of the Week"; to restrict her case assignment to the Houston Metropolitan area, thus minimizing her travel requirements; and to refrain from providing training or mentoring the attorneys, paralegals, interns or facilities.

99.     Ms. Boudreaux responded on VA Form 0857, that she granted two of the Plaintiff's five physician's restrictions. Specifically, Plaintiff was granted full-time telework and permission to refrain from providing training or mentoring to the attorneys, paralegals, interns or facilities.  In her response, Ms. Boudreaux alleged she was unable to reduce or restrict the number of cases assigned to the Plaintiff as is would interfere the essential functions of the position. Thus, inferring that Plaintiff was required to maintain a certain number of cases to comply with the essential functions of her duties. Plaintiff later learned in an email from S1, that there is no required number of cases an attorney must maintain in order to satisfy the essential functions of the position.

100.    Plaintiff appealed Ms. Boudreaux's response to her, then, second-line supervisor, MICHAEL HOGAN, Deputy General Counsel. Mr. Hogan is a Caucasian male with no known disability and no known prior EEO activity.

101.    Specifically, Plaintiff appealed the reduction of the number of cases she was assigned, to refrain from serving as "Attorney of the Week," and the restriction to only be assigned cases in the Houston metropolitan area.

102.    Mr. Hogan affirmed Ms. Boudreaux' decision and denied the Plaintiff's appeal.

103.    Despite Ms. Boudreaux' response on VA Form 0857, from 2013-2015, until her retirement, Ms. Boudreaux granted Plaintiff's requested accommodations. Namely, she was

17

allowed: full-time telework; a decreased caseload to 20 cases or fewer; permission to refrain from participating or being scheduled to serve as "Attorney of the Week"; a caseload assigned strictly to the Houston Metropolitan area, thus minimizing her travel requirements; and to refrain from providing training or mentoring the attorneys, paralegals, interns or facilities.

104.    Without error, conflict, or discrepancy, Plaintiff litigated the cases assigned to her.

105.    As previously stated, on or around October 1, 2015, there was a reorganization of the OGC department and Jeffrey Reeder (S1), Deputy Chief Counsel became Plaintiff's first-line supervisor. Mr. Reeder is a Caucasian male with no disability or prior EEO activity. Jeffery Stacey(S2), Chief Counsel, became her second-line supervisor. Mr. Stacey is a Caucasian male with no disability or prior EEO activity.

106.    In September 2015, Plaintiff emailed her newly selected supervisor, S1, to discuss her reasonable accommodation. S1 provided no response.

107.    The effect of Defendant's actions, as alleged above, deprived the Plaintiff of the reasonable accommodation placed by Mr. Reeder's predecessor, Andre' Boudreaux and denied Plaintiff equal employment opportunities and discriminated against her based on her disability, in violation of the Rehab Act.

108.    Plaintiff was intentionally given cases within and outside the Houston Metropolitan area; thus, increasing her caseload and requiring her to travel outside her assigned work area. She was intentionally scheduled to serve as "Attorney of the Week" more than once per month. Despite her accommodation, Plaintiff was required to train interns, paralegals and facilities, and in violation of her physician restrictions and her reasonable accommodation, she was required to come into the office to perform her duties.

109.   Plaintiff, on numerous occasions, attempted to approach management regarding her reasonable accommodation. As previously stated, in September 2015, and again on January 6, 2016, through a letter from her physician, Plaintiff approached management to discuss her reasonable accommodation, to no avail.

110.   It was not until June 2, 2016, almost six months after her physician's correspondence outlining her restrictions, that management responded to the Plaintiff's reasonable accommodation request.

111.   Plaintiff has suffered discrimination by S1 based on the actions listed above; and by S2 in his refusal to curtail or prevent the discrimination of S1.

112.   Plaintiff has suffered financial injury as a result of the Defendant's treatment.

113.   Plaintiff has suffered irreparable injury from the Defendant's disproportionate and discriminatory application of policies and practices as stated in this complaint.

114.   As a result of the Defendant's actions and failure to act, Plaintiff has suffered emotional and mental anguish, aggravation of the same, which resulted to injury to her health.

115.   Defendant acted with intent, malice and reckless disregard, in violation to Plaintiff's civil rights, therefore, entitling her to equitable relief and/or exemplary damages.

116.   Plaintiff is entitled to monetary damages for Defendant's violation of her rights as guaranteed by the Rehab Act.

### **THIRD CLAIM FOR RELIEF**

### **Violation of Title VII-Hostile Work Environment**

117.   To establish a claim of discriminatory harassment that creates a hostile work environment, a Plaintiff must show that:

a)   She is a member of the statutorily protected class;

b)      She was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class;

c)      The harassment complained of was based on the statutorily protected class; and

d)      The harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment." *Gibson v. Department of Homeland Security*, 109 LRP 3147 , EEOC No. 0720060079 (EEOC OFO 2008), *citing Humphrey v. U.S. Postal Service*, 99 FEOR 3090 , EEOC No. 01965238 (EEOC 1998).

In 29 CFR 1604.11 (b) requires that an assessment of whether conduct constitutes discriminatory harassment should consider the "record as a whole" and "the totality of the circumstances." It notes that the actions at issue must be viewed "on a case by case basis. "In assessing whether a hostile work environment exists, all of the circumstances must be considered, "including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; whether it was hostile or patently offensive; [and] whether the alleged harasser was a co-worker or a supervisor." *Henderson v. U.S. Postal Service*, 109 LRP 609 , EEOC No. 0120083298 (EEOC OFO 2008), *citing Harris v. Forklift Systems, Inc.*, 93 FEOR 9003 , 510 U.S. 17 (1993).Whether an objectively hostile or abusive work environment exists is based on whether a reasonable person in the complainant's circumstances would have found the alleged behavior to be hostile or abusive. The incidents must have been "sufficiently severe or pervasive to alter the conditions of complainant's employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 86 FEOR 9002 , 477 U.S. 57 (1986); *Harris v. Forklift Systems, Inc.*, 93 FEOR 9003 , 510 U.S. 17 (1993). The EEOC will examine the totality of a complainant's allegations to determine if a pattern of discrimination is alleged. Although the allegations may fail individually to state a claim, taken together they may be sufficient to allege a hostile work environment. *Rico v. U.S. Postal Service*, 108 LRP 44743 , EEOC No. 0120082463 (EEOC OFO 2008).

118.    The effect of the Defendant's actions, as alleged in this complaint, discriminated against the Plaintiff and subjected her to a hostile work environment based on her race, sex and disability in violation of Title VII and the Rehab Act. Plaintiff is a member of a protected class under Title VII as she is an African American female with a disability.

119.    Plaintiff was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class when she was: given disproportionate verbal and written counseling's; given a less than fully satisfactory mid-year appraisal and placed on a PIP. Additionally, Plaintiff was ordered to: document her billable hours into the GCLAWS data bank by the end of her tour of duty or no later than the end of the week; to open her cases by the end of her tour of duty; serve as "Attorney of the Week" more than once per month; submit numerous drafts of request for settlement authority on her cases; after securing settlement authority on her cases, undermined by her supervisor and ordered not to settle cases; train interns, paralegals and facilities; assigned cases outside of Houston Metropolitan area; and take additional time management training outside of her annual requirements in the VA Talent Management System.

120.    The harassment complained of was based on the statutorily protected class.

121.    The above referenced actions of the Defendants affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment when Plaintiff was given a less than fully successful mid-year appraisal and placed on a PIP. Thus, interfering with Plaintiff's employment and promotion potential. Plaintiff was also denied opportunities to speak with her attorney during PIP and counseling meetings and ordered to edit PIP and counseling notes and memos disseminated by S1.

122.    Plaintiff contends, in an effort to force her to forfeit her reasonable accommodation, S1 continuously harassed her nearly daily for a period of over eleven months. Plaintiff viewed Defendant's conduct as patently severe and pervasive, hostile, intimidating, abusive and offensive.

123.    Based on the actions listed above, Plaintiff has suffered harassment by S1.

124.     Plaintiff notified S2 of the alleged harassment. S2 failed to exercise reasonable care to prevent and promptly correct the harassing behavior and/or conduct. Therefore, Defendant is liable for the harassment Plaintiff was subjected to by S1.

125.     The said environment was so hostile and offensive Plaintiff's physician subsequently removed her from the workplace for a period of 15 months. Defendants actions and omissions also resulted in conduct that was sufficiently severe or pervasive as to create an objectively hostile work environment and caused Plaintiff to suffer financial injury as a result of their treatment.

126.     Plaintiff has suffered irreparable injury from the Defendant's disproportionate and discriminatory application of policies and practices as stated in this complaint.

127.     As a result of the Defendant's actions and omissions, Plaintiff has suffered emotional and mental anguish, aggravation of the same, and injury to her health.

128.     Defendant acted with intent, malice and reckless disregard in violation of Plaintiff's civil rights, therefore, entitling her to equitable relief and/or exemplary damages.

129.     Plaintiff is entitled to monetary damages for Defendant's intentional violation of her rights as guaranteed by Title VII and the Rehab Act.

## FOURTH CLAIM FOR RELIEF

### Violation of Title VII-Retaliation

130.     To establish a *prima facie* case of retaliation, Complainant must show that: (1) she engaged in prior protected activity; (2) the Agency was aware of the protected activity; (3) she was subsequently subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse treatment. *McMillen v. U.S. Postal Serv.*, EEOC Appeal No.

0120072556 (Feb. 26, 2009); *Whitmire v. Dep't of the Air Force*, EEOC Appeal No. 01A00340 (Sept. 25, 2000).

131.     An initial inference of retaliation arises where there is proof that the protected activity and the adverse action were related. *EEOC Compliance Manual Section 8: "Retaliation,"* No. 915.003, at 8-18 (May 20, 1998). Typically, the link is demonstrated by evidence that: (1) the adverse action occurred shortly after the protected activity, and (2) the person who undertook the adverse action was aware of the complainant's protected activity before taking the action. *Id.*

132.     Plaintiff contacted the Office of Resolution Management on July 14, 2016. Her formal complaint was filed on August 11, 2016. Management was made aware of her activity on July 18, 2016 and again on August 5, 2016. Subsequent to this date, despite Plaintiff's filings, continuous retaliatory action occurred including, but not limited to, the following:

- On July 21-22, 2016, the Deputy General Counsel, S2 allowed S1 to attend a hearing regarding the CD case; in Plaintiff's 13-year tenure no supervisor had ever accompanied her to a hearing;

- On July 25, 2016, S1 refused to authorize Plaintiff's settlement authority regarding the VT case even after she was granted settlement authority by the facility's director;

- On July 26 and August 2016, S1, in violation of any and all attorney client privileges, continuously badgered Plaintiff and demanded answers and information regarding the advice given to Plaintiff by her attorney;

- On August 1, 2016, S1 assigned Plaintiff cases originating in Dallas, Texas, along with two other cases in Houston, one in Austin, Texas, and a case in Sheridan, Wyoming;

- On August 1, 2016, S1 ordered Plaintiff to participate in a PIP meeting and a discussion of her cases meeting without the presence of counsel;

- On August 2, 2016, S1 issued Plaintiff a written counseling and ordered her to make track changes to the document;

- On August 2, 2016, S1 ordered Plaintiff to make track changes to his PIP notes by the close of her tour of duty;

23

- On August 9, 2016, S1 ordered Plaintiff to not copy and paste email messages between them in the GCLaws billing system;

- On August 9, 2016, S1 ordered Plaintiff to make track changes to his PIP notes by August 19, 2016;

- On August 9, 2016, S1 ordered Plaintiff to respond to his written counseling by August 19, 2016;

- On August 9, 2016, S1, in violation of her physician's restrictions and her reasonable accommodation, ordered Plaintiff to report to the office to do her work;

- On August 25, 2016, S1 and S2 accused Plaintiff of causing harm and detriment to her case;

- On August 25, 2016, S1 and S2 contacted Plaintiff's attorney and accused her of failing to record her time in GCLaws and accused Plaintiff of being difficult to manage;

- On August 30, 2016, S1 increased Plaintiff's caseload to 35 cases;

- After Plaintiff was forced to take extended medical leave, S1 continuously attempted to communicate with Plaintiff despite her being in extended medical leave status; This action was in violation of 29 CFR Part 825.220 (a)(1) of the Family Medical Leave Act. (FMLA) Specifically, S1 violated the act interfering with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections: An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act. Here, S1 ignored Plaintiff's request for FMLA and continued to contact her despite her request to implement her FMLA rights;

- On September 21 and 26, 2016, in violation of 29 CFR Part 825.220 (a)(1), while Plaintiff was in extended medical leave status, S1 required Plaintiff to account for 3.75 hours of her tour of duty for September 15, 2016; Thus, interfering with, the exercise of her rights under FMLA;

- From September 17, 2016 through October 20, 2016, S1 failed to respond Plaintiff's request for advanced sick leave;

- From September 17, 2016 through October 20, 2016, S1 failed to respond to Plaintiff's request to participate in the VLP;

- Without a request from the Plaintiff or notification to the Plaintiff, on October 21, 2016, S1 placed Plaintiff on leave without pay (LWOP);

- On November 5 and 10, 2016, S1 denied Plaintiff's requests for reassignment;

- From December 16, 2016 through December 30, 2016, S1 continued Plaintiff's LWOP status, even though Plaintiff had been donated 20 hours through the VLP;

- On December 30, 2016, S1 failed to generate an SF52 for Plaintiff's LWOP, causing her to infer that her health benefits and enrollment was terminated;

- In December 2016, S1 removed Plaintiff's name from the list of approved candidates for the VLP.

133.    While there is denial of knowledge of the protected activity by S1 and S2, the facts, when reviewed fully, demonstrate otherwise. Here, the Plaintiff shows an inference that there was a cause and effect relationship between management's actions and the prior EEO activity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment:

1.    Declaring that the acts and practices complained of herein are in violation of Title VII, the Rehab Act and retaliatory;

2.    Awarding Plaintiff any back pay with interest on any back pay awarded;

3.    Awarding Plaintiff any front pay with interest on any front pay awarded;

4.    Awarding Plaintiff any liquidated damages with interest on any liquidated damages awarded;

5.    Awarding Plaintiff compensatory damages, both pecuniary and non-pecuniary and such other monetary relief as may be deemed appropriate in amounts to be determined at trial;

6.    Awarding Plaintiff prejudgment and post judgment interest to the maximum extent permitted by law;

7.    Awarding Plaintiff, the cost of this action together with expert witness fees and reasonable attorney's fees; and

8.    Granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted by:

DOWNER, JONES, MARINO & WILHITE

Allison A. Jones
Louisiana Bar Roll Number: 16990
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
e-mail: ajones@dhw-law.com
*Application for Pro Hac Vice pending*


/s/ Ronda L. Cormier
Ronda L. Cormier
Texas Bar Roll Number: 24034168
12400 Shadow Creek Parkway #503
Pearland, Texas 77584
Tel: 713-854-5599
Fax: 713-794-7743
e-mail: ms.lizzette@gmail.com
*Local Counsel, Pro Se*

## CERTIFICATE OF SERVICE

This will certify that a courtesy copy of the attached pleading was served on December 19,

2019, on the following parties by United States Mail:

| | | |
|---|---|---|
| *Ryan Patrick* | *Richard J. Hipolit* | *Jeffery Stacey* |
| *U.S. Attorney for the Southern* | *Acting General Counsel for* | *Chief Counsel* |
| *District of Texas-Houston District* | *the Department of VA* | *Office of General Counsel* |
| *U.S. Attorney's Office* | *Office of General Counsel* | *U.S. Department of VA* |
| *Southern District of Texas* | *U.S. Department of* | *155 Van Gordon, Ste 551* |
| *1000 Louisiana, Ste. 2300* | *Veterans Affairs* | *Lakewood, CO 80228* |
| *Houston, TX 77002* | *810 Vermont Avenue NW* | |
| | *Washington, DC 20420* | |

Following the issuance of summons, formal service will be made in accordance with FRCP

4.

Allison A. Jones, *Pro Hac Vice application pending*

27