United States District Court
Southern District of Texas
**ENTERED**
December 07, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONDA L. CORMIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-4960 |
| | § | |
| DENIS McDONOUGH, SECRETARY OF | § | |
| VETERAN'S AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Magistrate Judge in this case that has been referred for all pre-trial proceedings is Plaintiff's Motion for Summary Judgment (Document No. 60) and Defendant's cross Motion for Summary Judgment (Document No. 62). Having considered the cross Motions for Summary Judgment, the parties' responses and additional briefing, the summary judgment evidence[1], the claims alleged in Plaintiff's live pleading, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

---

[1] Defendant, in its Reply (Document No. 63, p. 2, footnote 2) objects to the Court's consideration of Cormier's Journal Notes (Document No. 60-41), which have not been authenticated and which were not included with, or identified in, Plaintiff's disclosures; and the Declaration of Jeffrey Linhart (Document No. 60-65), which Defendant maintains goes well beyond the information about Linhart provided by Plaintiff in her disclosures, and which is irrelevant insofar as Linhart was a paralegal – not an attorney – and was not a comparator of Cormier. Defendant's Objections are SUSTAINED.

1

## I. Background

This is an employment discrimination case brought by Plaintiff Ronda L. Cormier against her current employer, the Office of General Counsel ("OGC") of the Department of Veteran Affairs ("VA") in Houston, Texas.   Cormier alleges in her Second Amended Complaint (Document No. 53) that Defendant violated her right to privacy when her "personally identifiable information (PII) (e.g. medical information)" was shared with "individuals who did not have a need to know" (Document No. 53 at 5-6); that she was discriminated against on the basis of her sex and race; and that she was subjected to a hostile work environment based on her race, sex, and disability.   Cormier's alleges that her claims arise under the Privacy Act of 1974, 5 U.S.C. § 552a(b); and Title VII, 42 U.S.C. § 2000e, et seq.

Both Cormier and Defendant have moved for summary judgment.  All briefing is complete and the Cross Motions for Summary Judgment are ripe for ruling.

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); see also *Morris v. Covan World Wide Moving, Inc*., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case*." Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price-Macemon*, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

## III.    Applicable Law

### A.    Title VII

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a)(1). Title VII also proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3. Actionable employment discrimination under Title VII can be based on disparate treatment, disparate impact, and/or a hostile work environment. *Barnes v. McHugh*, Civil Action No. 12-2491, 2013 WL 3561679 *11 (E.D. Tex. July 11, 2013) ("A plaintiff can assert "status-based" Title VII claims under 42 U.S.C.A. § 2000e–2(a) and (k), "retaliation" claims under 42 U.S.C.A. § 2000e–3, and "hostile

3

work environment" claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: "disparate treatment" claims pursuant to § 2000e–2(a)(1), and "disparate impact" claims pursuant to 2000e–2(k)"). There are two types of discrimination alleged in this case: disparate treatment discrimination and hostile work environment discrimination.

For the first type of discrimination – that based on disparate treatment – a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). See *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), cert. denied, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Here, there is no direct evidence of discrimination; therefore, it is the indirect method of proof that must be utilized.

Under that indirect method of proof, set forth in *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. A prima facie case of disparate treatment discrimination under Title VII requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Okoye v. Univ. of Texas Houston Health Science Center,* 245 F.3d 507, 512-13 (5th Cir. 2001*); Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). For purposes of maintaining a disparate treatment claim under Title VII, § 1981, sex, race, and national origin are all protected classes. 42 U.S.C. § 2000e-et seq; 29 U.S.C. 623(a)(1). A plaintiff is "qualified" for a position if the "objective requirements" for the position are met. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits.' " *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761). A plaintiff is treated "less favorably" when the defendant gives preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances." *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991); *see also Aguinaga v. Texas Alcohol and Beverage Comm'n,* 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a prima facie case of disparate treatment).

Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. See *McDonnell Douglas*, 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason' " for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. Id.; *McDonnell Douglas*, 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); see also *Jackson*, 602 F.3d at 378-79 ("A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' "). A plaintiff can avoid summary judgment on a Title VII claim if, at the third step of the burden shifting analysis, the plaintiff can

"substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720.

For the next class of discrimination claims – those based on a hostile work environment – a plaintiff must prove: (1) membership in a protected class; (2) unwelcome harassment; (3) harassment based on the plaintiff's membership in a protected class; and (4) harassment that affects a term, condition, or privilege of employment. See *Cortes v. Maxus Exploration Co*., 977 F.2d 195, 199 (5th Cir. 1992); see also *McCray v. DPC Indus., Inc*., 942 F. Supp. 288, 292 (E.D. Tex. 1996). As with disparate treatment discrimination claims, sex, race, and national origin are all protected classes for purposes of a hostile work environment claim. As for the harassment complained of, it must be both unwelcome, and based on the plaintiff's membership in a protected class. See, e.g., *Harris-Childs v. Medco Health Solutions, Inc.,* No. 4:03-CV-77-Y, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) ("To establish a prima-facie case of racial harassment, the plaintiff must provide evidence that the complained-of conduct had a racial character or purpose."), aff'd, 2006 WL 616022 (5th Cir. 2006) ("[W]e agree with the district court that Appellant has failed to show that the harassment was racially based*"); Vallecillo v. U.S. Dep't of Housing & Urban Dev.,* 155 F.App'x 764, 767 (5th Cir. 2005) ("Accepting all of the incidents Vallecillo lists as true, none are related to his protected status."); *Smith v. Ridge*, Civil Action No. H-03-5864, 2005 WL 6443884 *4-5 (S.D. Tex. Feb. 8, 2005) (granting summary judgment on hostile work environment age discrimination claim where there was no summary judgment that any harassment "was based on [ ] age"). Finally, the alleged harassment must be sufficiently severe or pervasive such that it can be said to affect a term, condition or privilege of employment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-23 (1993). Whether the harassment is sufficiently severe or pervasive is based on the totality of the circumstances. [W]hether an environment is 'hostile' or

6

'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23; accord *Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).

The conduct must be both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the environment to be abusive. *Harris,* 510 U.S. at 21-22. The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently affect a person's employment conditions to fall within the ambit of Title VII. *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972); see also *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57 (1986). Moreover, racial comments which are sporadic in nature or made in casual conversation do not violate Title VII. *McCray,* 942 F.Supp. at 293; *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir. 1987). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the " 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Instead, there must be a "steady barrage of opprobrious racial comment." *McCray*, 942 F.Supp. at 293; *Johnson v. Bunny Bread Co*., 646 F.2d 1250, 1257 (8th Cir. 1981).

### B.    Privacy Act/HIPAA

The Privacy Act "prohibits a federal agency from disclosing personal information contained in its records about its employees, absent employee consent, unless a specified exception applies." *Andreadakis v. McDonough*, No. EP-20-CV-00104-DCG, 2021 WL 2444950, at *1 (W.D. Tex. June 15, 2021).  Section 552a(b) provides:

Under No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

**(1)** to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

**(2)** required under section 552 of this title;

**(3)** for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

**(4)** to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

**(5)** to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

**(6)** to the National Archives and Records Administration as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Archivist of the United States or the designee of the Archivist to determine whether the record has such value;

**(7)** to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

**(8)** to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;

**(9)** to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;

**(10)** to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the Government Accountability Office;

**(11)** pursuant to the order of a court of competent jurisdiction; or

**(12)** to a consumer reporting agency in accordance with section 3711(e) of title 31.

Subsection (g)(1)(D) of § 552a allows for a private cause of action for violations of the disclosure provisions in subsection (b).  It provides, in relevant part:

> Whenever any agency--
> **(D)** fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
>
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.
> **(4)** In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
> **(A)** actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
> **(B)** the costs of the action together with reasonable attorney fees as determined by the court.

A Privacy Act claim requires a plaintiff to allege and prove that "a *federal* agency willfully or intentionally disclosed a "record" within a "system of records," and that the record's disclosure adversely affected him. *Jackson v. Briones*, No. 9:17-CV-00133-KFG, 2018 WL 3343794, at *3 (E.D. Tex. July 9, 2018).   There must also be proof of actual damages. *Doe v. Chao*, 540 U.S. 614, 627, 124 S. Ct. 1204, 1212, 157 L. Ed. 2d 1122 (2004); *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 2557043, at *9 (E.D. Tex. May 20, 2020).

While there is a private cause of action provided for in the Privacy Act, there is no counterpart in the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-1 to d-7. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("HIPAA has no express provision creating a private cause of action").  That means that an individual cannot, as a matter of law, sue for violations of HIPPA.  *Id.* at 572 ("We hold there is no private cause of action under

9

HIPAA and therefore no federal subject matter jurisdiction over" asserted HIPAA violation claims by a private individual).

## IV.    Discussion

In her Second Amended Complaint, which was allowed by Order entered on July 19, 2021 (Document No. 57), Cormier asserted three claims: for sex and race disparate treatment discrimination under Title VII, for hostile work environment discrimination based on her sex, race and disability under Title VII, and for violations of the Privacy Act.   Cormier did not assert a retaliation claim in her Second Amended Complaint nor did she raise a claim for violations of the Rehabilitation Act in her Second Amended Complaint.   Because no claim for retaliation or violations of the Rehabilitation Act is evident in Cormier's live pleading (her Second Amended Complaint (Document No. 53)), those claims, despite the parties' Motion for Summary Judgment briefing, are not active or "live" claims and will not be addressed herein.

The following facts are not in dispute.  Cormier is female, and an African American.  She was hired by Defendant as a general attorney for OGC in 2007.  In March 2014, Cormier requested five accommodations for her alleged disabilities of fibromyalgia, anxiety, and generalized depression disorder.  *See* Accommodation Request Determination (Document No. 62-2 at 69); Cormier Testimony at 11 (Document No. 62-1 at 4).  Two were granted (full-time telework; and restricted involvement in training of facilities, interns, paralegals, and law students), and three were denied (reassignment to OGC's Ethic's team; limiting her caseload to cases in the Houston Metropolitan area; and having her "Attorney of the Week" duties limited to employment law matters in the Houston Metropolitan area).  *Id.*  Cormier sought reconsideration of the three accommodation denials.  On May 28, 2014, the Assistant General Counsel, Michael R. Hogan, issued a decision, in which he wrote:

10

I am authorizing the following accommodations, which were requested in your physician's note of March 1, 2014 and which I believe would be effective in accommodating your conditions:

a. You will be allowed to telework full-time, except during such times as your work duties (for example, representing a client facility at hearings, preparing witnesses, etc.) require your present at the office, a client facility, or other location. Ms. Andree Boudreaux approved full-time telework on or about March 19, 2014. This term will continue provided you perform at the Fully Successful level.

b. You will retain the cases you had prior to your leave and, to the greatest extent possible, any new case assignments will be restricted to the Houston metropolitan area.

c. Your Attorney of the Week responsibilities will resume and, to the extent you receive questions outside of employment and labor law matters, Mr. Kevin Curtis will be available to consult with you and assist you in preparing the correct response.

d. Your duties involving training of facilities and interns, paralegals, and law students will be restricted to those you believe are within your current medical restrictions.

Memorandum dated May 28, 2014 (Document No. 62-2 at 71-72).

On October 1, 2015, the OGC underwent a reorganization. Prior to the reorganization, the Regional Counsel's Office handled only cases in Texas and Louisiana. The newly formed Continental District West ("CDW") office handled cases in Texas, Oklahoma, Colorado, Wyoming, Utah, and Montana. It was following that reorganization, the retirement of the regional counsel who had overseen Cormier's accommodation requests (Andree Boudreaux), and Cormier's assignment to new first-line and second-line supervisors, Jeffrey Reeder and Jeffrey Stacey, respectively, that Cormier's claims arose, with Cormier stating in her Motion for Summary Judgment that "[u]pon reorganization, VA began to violate Plaintiff's reasonable accommodation" by assigning her "a heavier caseload," and assigning her "cases outside Houston." (Document No. 60 at 9). Issues were then raised by Reeder about Cormier's performance. *See* email between Reeder and Cormier, dated November 30, 2015 (Document No. 62-2 at 137-138). After taking some time off in late 2015, Cormier returned and, in an email request, asked that she be allowed "to continue [her] current accommodations." That email request was accompanied by a letter

from Cormier's psychiatrist, Dr. Margaret Basu (Document No. 62-2 at 140-145.  Jeffrey Stacey inquired, in response to Cormier's email request, whether Cormier was seeking a "modification" of the accommodations she had been granted in 2014.  *See* Email from Stacey to Cormier, dated February 8, 2016 ("As I understand them, the accommodations listed in the letter from your physician (attached) do not match your current approved accommodations (also attached).  Are you requesting a modification of your accommodations?  Please let me know.").  Cormier responded that she was not seeking a modification, and that her current restrictions were correct. *Id.* ("No, the current restrictions are correct.  Due to my "attorney of the week" and frequent direct reviews from MEDVAMC and my supervisors my caseload continues to increase.  My physician is aware of the situation.  If a modification is needed supplemental documentation will be submitted.").

In early February 2016, Reeder assigned Cormier a case in San Antonio, Texas. Cormier emailed him in response, and stated that she had been given, as an accommodation, a restriction that limited her to cases in the Houston area.  *See* Email dated February 16, 2016 ((Document No. 62-2 at 152-153).  Reeder responded by referencing the AGC's determination that Cormier would only be given cases in Houston to the "greatest extent possible."   Reeder email of February 17, 2016 (Document No. 62-2 at 151-152).  When Cormier was not satisfied with that response, and pointed out that she had not been assigned any cases outside of Houston for over 23 months, the AGC (Michael Hogan) was asked to clarify his earlier 2014 determination.  In so doing, Hogan wrote: "The clause means if there are new cases from Houston clients they should be assigned to her.  If there are none, she should be assigned other cases to ensure she is fully employed.  She should utilize all available methods to minimize the need for travel such as phone, V-TEL, or Lync."  Hogan email to Stacey (Document No. 62-2 at 149).  Cormier subsequently complained

12

to Reeder and Stacey about the number of cases she was being assigned, including additional cases

outside of the Houston area.  Emails of February 23 and 24 (Document No. 62-2 at 146-149).

Reeder then asked Cormier to provide medical documentation to support what he considered to be

a requested modification of the accommodations she had been granted in 2014.  Reeder email to

Cormier, dated April 14, 2016 (Document No. 62-2 at 192); Letter from Reeder to Cormier, dated

May 16, 2016 (Document No. 62-2 at 199).  Cormier responded to that correspondence by stating

that she was not seeking a modification or amendment of the accommodations that were expressly

and tacitly granted to her in 2014: "As I stated to you in my previous emails and in-person

communications, when I returned from my extended leave, despite Andree['s] conflicting

accommodation responses, I was accommodated with fewer than 20 cases.  Therefore, my request

is not an amendment."  Cormier email to Reeder, dated May 18, 2016 (Document No. 62-2 at 201);

*see also* email from Cormier to Evester Edd, dated May 26, 2016 (Document No. 62-2 at 212

("Please be advised, this is not a request for an amendment or modification to my reasonable

accommodation request.").  Nonetheless, on June 1, 2016, Reeder asked Cormier to sign a pre-

filled "Form 0857 Request for Reasonable Accommodation," which listed four accommodations

that formed the basis of the January 2016 medical provider letter from Dr. Basu that Cormier had

previously submitted:

1. Full-time telework
2. A caseload that limits the Plaintiff's cases to the number she currently had with any new cases restricted to those in the Houston metroplex area;
3. Limiting the Plaintiff's duties in the CDW Attorney of the Week rotation to those relating to her area of specialization within the Houston metropolitan area; and
4. Restricting the Plaintiff's involvement in training of the facility's interns, paralegals, and law students.

Accommodation Request Determination (Document No. 62-2 at 236-237).  Cormier did not sign

that Form 0857 Request for Reasonable Accommodation," but items one and four were granted

13

anyway, allowing Cormier to continue with full-time telework, and restricting her from the training of the facilities interns, paralegals and law students. *Id.* The other two requests (2 and 3) were denied on the basis that the requested accommodation would remove an essential function of Cormier's position. *Id.*

On July 14, 2016, in a mid-year performance review, Reeder rated Cormier less than fully satisfactory and placed her on a performance improvement plan ("PIP"). (Document No. 62-2 at 279-292). The PIP required Cormier to: complete time management training, timely open new cases for each matter assigned, timely enter complete and descriptive case notes within a week of the event to be noted, and participate in weekly telephone meetings with Reeder. PIP (Document No. 62-2 at 287-292) Cormier was also, two weeks into the PIP, issued written counseling by Reeder relative to a settlement offer Cormier had made in a case, which Reeder had specifically instructed her not to make. *See* August 2, 2016, Written Counseling Memorandum (Document No. 62-2 at 355-357). In and around that same time, Cormier filed a formal EEO Complaint, which she supplemented on November 10, 2016, December 2, 2016, and January 31, 2017. In that Complaint, Cormier alleged sex, race and disability discrimination and a hostile work environment.

On September 16, 2016, Cormier began extended medical leave (Document No. 62-2 at 436). Plaintiff used accrued annual and sick leave, leave under the Family and Medical Leave Act ("FMLA"), leave without pay "(LWOP"), advance leave, and leave donated to her under the Voluntary Leave Program ("VLP"). During that time, she made several requests to be reassigned, but was advised that no positions were available. On December 10, 2017, Cormier accepted a position with Defendant as an EEO Manager, a position with a lower grade and salary. (Document No. 60-62).

14

A.        **Disparate Treatment Discrimination Claim**

Cormier alleges that she was discriminated against based on her race and sex.  Cormier is a member of a protected class as she is female and an African American.  There is no dispute that Cormier was qualified for her position.  What is in dispute is whether Cormier suffered an adverse employment action – an essential element of a *prima facie* case of disparate treatment discrimination.

A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Butler v. Ysleta Indep. Sch. Dist*., 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761).  Here, Cormier complains of work duties that went beyond her requested accommodation, and a poor performance review, which led to more work duties.  She also argues that prior to reorganization she was afforded certain benefits and accommodations for her disability and that after reorganization those accommodations were taken away.  In addition, Cormier points to evidence that before the reorganization she was not required to serve as "Attorney of the Week," and that after reorganization she was, and that following the reorganization she was given a heavier caseload and assigned cases outside of Houston.

Cormier's complaints about her job duties, whether they were more onerous or not and whether they required out-of-town travel or not, do not constitute an adverse employment action that will support a disparate treatment claim.  The job duties Cormier complains about were the result of a poor performance evaluation, and her supervisor's attempt to have her provide better documentation of the time spent she spent on matters/cases assigned to her and better descriptions of the tasks she was undertaking.  These additional job duties were, necessarily, associated with

15

Cormier's PIP.  Cormier's less-than-satisfactory review and her placement on the Performance Improvement Plan ("PIP") fall outside of what can be considered an adverse employment action. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 160, 207 L. Ed. 2d 1097 (2020) ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action."); *Turner v. Novartis Pharms. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011) ("The district court was correct to find that placing an employee on PIP is not an ultimate employment decision. There is no evidence that Turner was demoted or received reduced compensation due to the PIP. Thus, Turner failed to establish a prima facie case of discrimination because he failed to show that a PIP was an ultimate employment decision.").  In addition, the out-of-town travel and assignment of cases outside the Houston area cannot be considered an adverse employment action because it was required, at times, of all similarly situated employees.

Moreover, even if Cormier had identified a viable adverse employment action, she has failed to identify a similarly situated employee,  outside her protected class, who was treated more favorably that she.  Cormier maintains that she was being held to a different standard than her comparators and that cases in Houston were given to other attorneys when they should have been given to her. Cormier, however, compares herself to those who are not similarly situated.  None of the comparators Cormier has identified (Sandra Cawley, Thomas Herpin and Jeffrey Linhart) were placed on PIP and, as such, none "have essential comparable violation histories" and are therefore not similarly situated. *West v. City of Houston,* 960 F.3d 736, 740 (5th Cir. 2020).  In the absence of evidence that Cormier suffered an adverse employment action and was treated less favorably than someone outside her protected class, Cormier has not established a *prima facie* case of disparate treatment discrimination, and summary judgment is warranted for Defendant on that

16

basis alone.  Summary judgment is also, however, warranted for Defendant because Defendant has articulated legitimate, non-discriminatory reasons for every action it took, and Cormier has not come forth with any summary judgment evidence of pretext.

Defendant has submitted documentary evidence, including preceding emails, which outline Cormier's performance deficiencies, and the bases for her poor performance evaluation and her placement on a PIP.  (Document No. 62-2 at 137-138; 279-292).  In addition, Defendant has submitted evidence that Cormier's case load, and her job duties were in line with the accommodations she had been formally granted, and that the reorganization of the OGC to a regional office in 2015 necessarily affected the geographic location and the number of matters/cases Cormier was assigned.  (Document No. 62-2 at 146-149, 151-152).  Finally, Defendant has pointed to evidence that Cormier repeatedly refused to accept case assignments. All of this summary judgment evidence supports both the poor performance review Cormier received, and the need for a PIP.  Cormier, in response, has come forth with no summary judgment evidence whatsoever that any unwanted case assignments, assigned work duties or poor performance evaluations were related to, or based on, her race or sex.  Defendant is therefore entitled to summary judgment on her Title VII disparate treatment claims.

### B.     Hostile Work Environment Claims

Cormier also alleges that she was subjected to a hostile work environment based on her sex, race and disability.  Cormier, however, has failed to come forth with *any* summary judgment evidence that she was subjected to severe or pervasive harassment *based on her sex or race* Defendant is therefore entitled to summary judgment on Cormier's claims of a hostile work environment based on her race and/or her sex.  As for Cormier's claim that she was subjected to a hostile work environment based on her disability (her fibromyalgia, generalized anxiety disorder,

and generalized depression disorder), there is also no summary judgment evidence that Cormier was subjected to severe or pervasive harassment *based on her disability*.  In addition, there is no summary judgment evidence that Cormier was subjected to severe or pervasive harassment based on her requests for accommodation for her disability.

Cormier puts forth evidence of her less-than-satisfactory performance review, written and verbal counseling, and being placed on PIP, as evidence that she endured a hostile work environment, all of which has its origins in her requests for accommodations for her disability. But neither criticisms of Cormier's performance, and nor actions designed to have her address those performance criticisms, constitute harassment, much less harassment based on her disability or her disability accommodations.  *See Kang v. Bd. of Supervisors of La. State Univ.,* 75 F. App'x 974, 976 (5th Cir. 2003) (poor performance evaluation and criticism did not constitute severe or pervasive harassment needed to support a hostile work environment claim).  Here, the summary judgment evidence is full of both Cormier's requests for accommodation and her insistence that her job duties and case assignments exceeded the accommodations she had been given.  The summary judgment evidence is also replete with Reeder's and Stacey's attempts to determine whether the job duties and cases Cormier was being assigned comported with the granted accommodations and whether Cormier was seeking a modification of the allowed accommodations.  Given the uncontroverted summary judgment evidence in the record that Cormier was never given an accommodation that limited her to twenty (20) cases or less, Defendant's attempts to obtain clarity as to the accommodations requested by Cormier and those granted to her do not, on this record constitute "harassment."  Based on the absence of evidence of severe or pervasive harassment, Defendant is entitled to summary judgment on Cormier's hostile work environment claims as well.

C.        Privacy/HIPPA Claim

Cormier alleges in her Second Amended Complaint that the Privacy Act and HIPAA were violated when Reeder spoke to another employee, Deborah McCallum[2], about Cormier's disability and her requested accommodations.    According to Cormier, Defendant "in their effort to zealous[ly] represent their agenda shared PII [personally identifiable information] with an individual who did not have a need to know in order to perform their duties."  Second Amended Complaint (Document No. 53 at 6).  Defendant moves for summary judgment on Cormier's privacy claims on the basis that Cormier did not raise the claim in an EEOC complaint and did not exhaust her administrative remedies, and on the basis that the communication between Reeder and McCallum fell within a § 552a(b)(1) exception.

Having considered the uncontroverted evidence, summary judgment is warranted on the merits of Cormier's privacy claims notwithstanding her failure to raise the claims in her EEOC complaint.  First, there is, as set forth above, no private cause of action for HIPAA violations. Second, Defendant's summary judgment evidence, uncontroverted by Cormier, is that the person Reeder spoke to about Cormier's disability and her accommodations, Deborah McCallum, was a designated VA employee with expertise on disability accommodations.  Reeder testified about this as follows: "Deborah McCullom is an attorney with OGC who specializes in reasonable accommodation.  She is our expert in the field and the one that we, as trial attorneys, rely upon for guidance." (Document No. 62-2 at 7).  Cormier has not disputed McCallum's role or her expertise, and has otherwise not raised, with evidence, a genuine issue of material fact on McCallum had a need to know Cormier's PII in order to perform her job.  Moreover, access to an employee's medical information, like that shared by Reeder with McCallum, has been found to fall within the

---

[2] McCallam's name is spelled differently throughout the record.

19

"need to know" exception in § 552a(b)(1).  *See Doe v. U.S. Dep't of Just.,* 660 F. Supp. 2d 31, 45 (D.D.C. 2009)(the distribution of plaintiff's medical information "to DOJ security personnel, the DOJ officials who supervised the Accommodation Coordinator, and EOUSA Attorney" was proper under § 552a(b)(1)'s need to know provision); *Mount v. U.S. Postal Serv.*, 79 F.3d 531, 533–34 (6th Cir. 1996) (employees or agents of the USPS who had "responsibilities for making employment and/or disciplinary decisions regarding plaintiff" had a need to know information about plaintiff's medical records and mental stability);  *Magee v. U.S. Postal Serv.*, 903 F. Supp. 1022, 1029 (W.D. La. 1995), *aff'd,* 79 F.3d 1145 (5th Cir. 1996) (finding postmaster needed the plaintiff's medical report to "determine whether plaintiff could perform the essential functions of his job, and, if plaintiff could not, what reasonable accommodations could be made").

Because the uncontroverted summary judgment evidence establishes that the communication between Reeder and McCallum about Cormier fell within § 552a(b)(1), Defendant is entitled to summary judgment on Cormier's Privacy Act claim(s).

## V.        Conclusion and Recommendation

Based on the foregoing and the conclusion that there is no summary judgment that raises a genuine issue of material fact on any of the live claims in Plaintiff Ronda L. Cormier's Second Amended Complaint, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 62) be GRANTED, that Plaintiff's Motion for Summary Judgment (Document No. 60) be DENIED, and that all of Plaintiff Ronda L. Cormier's claims be dismissed with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file

written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), cert. denied, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ___7th___ day of December, 2021.


*Frances H. Stacy*

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE